```
               UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF LOUISIANA
                    ALEXANDRIA DIVISION


ERICA OWENS o/b/o J.G.O.,        CIVIL ACTION
       Appellant                 NO. 1:08-CV-1635

VERSUS

U.S. COMMISSIONER OF             JUDGE JAMES T. TRIMBLE
SOCIAL SECURITY,                 MAGISTRATE JUDGE JAMES D. KIRK
       Appellee
```

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is an appeal from a final decision of the Commissioner of Social Security, filed by Erica Owens ("Owens") on behalf of her minor son, "JGO," on October 30, 2008.

Owens filed an application for supplemental security income benefits ("SSI") on behalf of her minor son, JGO, on June 30, 2006, alleging a disability onset date of June 1, 2005 (Tr. p. 71) due to behavior problems (Tr. p. 78). That application was denied by the Social Security Administration ("SSA") (Tr. p. 34).

A de novo hearing was held on May 28, 2008, at which Owens and JGO waived their right to appear, but had an attorney appear for them (Tr. pp. 171-174). The ALJ found that, although JGO suffers from severe impairments of a depressive disorder and history of a left knee injury (Tr. p. 17), he did not have an impairment of combination of impairments that functionally met or equaled a listed impairment in Appendix I, and was not under a disability as defined in the Social Security Act ("SSA") at any time through the

date of the ALJ's decision on July 9, 2008 (Tr. p. 23).

Owens requested a review of the ALJ's decision, but the Appeals Council declined to review it and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Owens next filed this appeal for judicial review of the Commissioner's final decision. Owens raises the following issues for review on appeal (Doc.10 ):

> 1. The ALJ failed to afford plaintiff a full and fair hearing in the absence of an effective waiver of the right to appear, either from plaintiff or plaintiff's representative.
>
> 2. The ALJ failed to fully and fairly develop the facts and prejudice resulted.

The Commissioner responded to Owens' appeal (Doc. 11), and Owens filed a brief in reply (Doc. 16). Owens' appeal is now before the court for disposition.

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420,

1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Summary of Pertinent Facts

In the 2005-2006 school year, JGO received out-of-school suspensions for about 25 days for disrespect, improper dress, profanity, and fighting, several days of in-school suspensions, and

3

was ultimately retained in the seventh grade (Tr. pp. 87-123).

In August 2006, JGO was found to be nearsighted with astigmatism which was correctable to 20/20; Dr. Paul B. LaPoint, an optometrist, stated that JGO would always need to wear his glasses (Tr. p. 141). Dr. LaPoint also noted that, during his testing, JGO was able to communicate, socialize, and complete his tasks (Tr. p. 141).

In September 2006, JGO underwent a mental status examination with Dr. Nicole F. Lanclos, a clinical psychologist employed by Disability Determination Services to evaluate JGO (Tr. pp. 147-149). Dr. Lanclos noted JGO was thirteen years and eight months old, 5'8" tall, and weighed 180 pounds (Tr. p. 148). Dr. Lanclos also noted that JGO had moved with his mother, brother, and grandmother from New Orleans to Bunkie after their home was destroyed during Hurricane Katrina (Tr. pp. 147-148). JGO was expelled from Mansura Middle School in the 2005-2006 academic year, following excessive rule violations, and was currently repeating the seventh grade in regular classes (Tr. p. 147). Owens reported and Dr. Lanclos found that, although JGO had a history of mild noncompliance, his behavior problems, irritability, and noncompliance escalated following the family's relocation (Tr. pp. 147-148). Dr. Lanclos found JGO's mood was typically irritated and easily agitated, which often resulted in explosive outbursts and aggression (Tr. p. 148).

Dr. Lanclos diagnosed severe adjustment disorder with mixed disturbance of emotions and conduct based upon JGO's excessive mood

disturbance, noncompliance, and aggression (Tr. pp. 148-149). Dr. Lanclos also noted his sleep and appetite were disturbed, she estimated his intellectual functioning to be in the below average range, and stated that a comprehensive academic evaluation was warranted to determine whether he needed special education services (Tr. p. 149). Dr. Lanclos stated that JGO was unable to function effectively, appropriately, and in an age-appropriate manner due to his depressed mood, anger, aggression, and defiance, and recommended immediate outpatient mental health counseling to develop better coping skills to manage his adjustment disorder, and psychiatric consultation for medication to manage his hypersomnia, diminished appetite, depressed mood, and aggression (Tr. p. 149).

JGO received counseling in 2007 and 2008 (Tr. pp. 158-167) and was prescribed Prozac (Tr. p. 159).

In October 2007, JGO had an x-ray and an MRI of his left knee (Tr. pp. 169-170), which showed minimal edema and moderate joint effusion, bone bruising, a small area of osteochondritis, and minimal osteochondromatosis (Tr. p. 170).

### ALJ's Findings

Under the evaluation process for determining whether a child is disabled, the ALJ has to determine (1) whether the child is engaging in substantial gainful activity; (2) if not, whether the child has a severe impairment; and (3) if so, whether the child has an impairment which (a) meets, (b) medically equals, or (c) functionally equals the severity of a listed impairment. 20 C.F.R. § 416.924. Also, Moore ex rel. Moore v. Barnhart, 413 F.3d 718,

5

721 (5th Cir. 2005); Jefferson v. Barnhart, 356 F.SUpp.2d 663 (S.D.Tex. 2004); Richardson ex re. C.R. v. Barnhart, 338 F.Supp.2d 749 (S.D.Tex. 2004). If a severe impairment is found, then it must meet the duration requirement to determine if the claimant is disabled. 20 C.F.R. 416.924. Medical equivalency exists if the child's impairment is at least equal in severity and duration to the medical criteria of the listed impairment. Moore ex rel. Moore, 413 F.3d at 721.

If a child's impairments do not meet or medically equal a listed impairment, a functional limitation assessment is done to determine whether the functional limitations are disabling (functional equivalence for children). 20 C.F.R. § 416.926a. In the functional equivalence approach, whether a child meets the "listing-level severity" standard is dependent on whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. The broad areas of functioning are called "domains" - (1)acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. To establish functional equivalence, a child must have a medically determinable impairment or combination of impairments that results in marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a. Also, Moore ex rel. Moore, 413 F.3d at 723. A marked limitation is present where the impairment interferes seriously with one's

6

ability to "independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a. An extreme limitation is present where one's impairment interferes very seriously with one's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a. An extreme limitation will be found if a child has a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and the day-to-day functioning in domain-related activities is consistent with that score. Moore ex rel. Moore, 413 F.3d at 723.

The ALJ found that JGO has never worked, and that his severe impairments of a depressive disorder and history of a left knee injury did not result in any marked limitation in functioning (Tr. p. 17). The ALJ also found that JGO had a less than marked limitation in acquiring and using information, no limitation in attending and completing tasks, a marked limitation in interacting and relating with others, a less than marked limitation in moving about and manipulating objects, no limitation in the ability to care for himself, and no limitation in his health and physical well-being (Tr. pp. 20-23). The ALJ concluded that JGO was not disabled at any time through the date of his decision on July 9, 2008 (Tr. pp. 14-23).

## Law and Analysis

First, Owens contends the ALJ failed to afford JGO a full and fair hearing in the absence of an effective waiver of the right to appear, either from plaintiff or plaintiff's representative.

De novo hearings were scheduled on August 23, 2007 (Tr. p. 180) and September 17, 2007 (Tr. p. 176), but Owens and JGO failed to appear for the hearings due to transportation problems.[1]  A de novo hearing was held on May 28, 2008, at which JGO's representative appeared (Tr. p. 171).  The ALJ stated that, after conferring with their representative, he had concluded that Owens' and JGO's transportation problems were recurring and they would always have the same problem appearing for a hearing (Tr. p. 173). The ALJ stated on the record that Owens and JGO waived their right to appear and, in the alternative, that Owens and JGO were nonessential witnesses.  JGO's attorney then submitted additional medical records for consideration (Tr. pp. 173-174).  Claimants contend they did not waive their right to appear, nor were they nonessential witnesses.

Jurisdiction for judicial review is provided by 42 U.S.C. § 405(g), which provides that a court may review any final decision of the Commissioner made after a hearing to which the plaintiff was a party.  Alexander v. Shalala, 1994 WL 532650 (E.D.La. 1994), citing Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980 (1977).  This provision limits judicial review to a particular type of agency action, a final decision of the Commissioner made after a hearing. Califano, 430 U.S. at 108, 97 S.Ct. at 986.  A final decision requires exhaustion of administrative remedies.  Once a claimant

---

[1] Owens and JGO live in Bunkie, Louisiana, and the hearings were to be held in Alexandria, Louisiana (less than thirty miles away).  It is noted that the hearing transcripts state, erroneously, that they were held in Alexandria, Virginia.

meets these requirements, there is a final decision.  <u>Harper v. Bowen</u>, 813 F.2d 737, 740 (5th Cir. 1987), cert. den., 484 U.S. 969, 108 S.Ct. 466 (1987).

A social security claimant has a right to receive notice and appear personally before the ALJ at the disability hearing.  However, if the claimant is properly notified of his right to appear, he may waive it.  <u>Pogany v. Apfel</u>, 198 F.3d 247, *1 (6th Cir. 1999) (the court concluded the claimant was aware of the hearing and waived his right to attend by failing to appear).

A claimant who is properly notified of a scheduled hearing but fails to appear without good cause has failed to exhaust administrative remedies and is not entitled to judicial review.  <u>Pallotta v. Barnhart</u>, 144 Fed.Appx. 938 (3d Cir. 2005), cert. den., 547 U.S. 1092, 126 S.Ct. 1785 (2006), citing <u>Hoye v Sullivan</u>, 985 F.2d 990, 991 (9th Cir. 1992)(by refusing to attend the hearing, the claimant waived his opportunity for a hearing and failed to exhaust the administrative remedy upon which judicial review depended).  Also <u>Brandyburg v. Sullivan</u>, 959 F.2d 555 (5th Cir. 1992).  However, a claimant's failure to exhaust his remedies may be waived if he demonstrates that he has a constitutional claim that is (1) collateral to a substantive claim of entitlement, (2) colorable, and (3) one whose resolution would not serve the purposes of exhaustion.  <u>Hoye</u>, 985 F.2d at 991, and cases cited therein.  See also, <u>Riecke v. Barnhart</u>, 184 Fed.Appx. 454 (5th Cir. 2006); <u>Rankin v. Heckler</u>, 761 F.2d 936, 940-941 (3d Cir. 1985).

In the case at bar, claimants' representative appeared on

their behalf,[2] and did not object when the ALJ stated they had waived their right to appear because they had failed to appear for the third time and they did not have a way to travel to the hearing. The ALJ found that problem would persist and, apparently, found it constituted good cause for their failure to appear. Therefore, claimants have exhausted their administrative remedies and this appeal is properly before this court.

Since claimants did not have a way to attend the hearing personally, but their representative appeared in their stead and did not object to the ALJ's finding they had waived their right to appeal, the ALJ did not err in so finding, despite the lack of a written waiver. This was claimants' third failure to appear and the ALJ spoke on the telephone with Owens regarding their inability to appear at a hearing. Therefore, claimants' contention that they did not waive their right to appear is meritless.

Since claimants waived their right to appear at the administrative hearing, their contention that the ALJ erred in finding they were nonessential witnesses is moot.

2.

Claimants next contend the ALJ failed to fully and fairly develop the facts, to their prejudice.

An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits. However, the ALJ's decision will not be reversed for failure to

---

[2] Pursuant to 20 C.F.R. 404.949, a claimant or a person designated by the claimant to act as his representative may appear before the ALJ to state his case.

fully and fairly develop the record unless the claimant shows he was prejudiced by the ALJ's failure.  To establish prejudice, a claimant must demonstrate he could and would have adduced evidence that might have altered the result.  <u>Carey v. Apfel</u>, 230 F.3d 131, 142 (5th Cir. 2000), and cases cited therein.

In the case at bar, there were no witnesses to question at the hearing, so the ALJ stated he would decide the case based on the documentary evidence.  The ALJ accepted additional medical records from claimants' attorney and left the record open for another week for claimants to file additional evidence (Tr. p. 174).

Claimants contend they were prejudiced by the ALJ's failure to develop the record with regard to JGO's mental functioning after the consulting psychologist recommended additional psychological testing and IQ testing.  The ALJ has the discretion to order a consultative examination.  An examination at government expense is not required unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.  <u>Anderson v. Bowen</u>, 887 F.2d 630, 634 (5th Cir. 1989).  Also, <u>Brock v. Chater</u>, 84 F.3d 726 (5th Cir. 1996); <u>Wren v. Sullivan</u>, 925 F.2d 123, 127 (5th Cir. 1991); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1472 (5th Cir. 1989).

In <u>Fraction v. Bowen</u>, 787 F.2d 451 (8th Cir. 1986), the court found that, where the treating and consulting physicians recommended that a claimant undergo further tests, the ALJ should have ordered the tests in order to develop the evidence until it was sufficiently clear to make a fair determination as to whether

the claimant is disabled or not. See also, Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1993); Smith v. Shalala, 1994 WL 180130, *7 n.8 (E.D.La. 1994).

In the case at bar, the only medical evidence as to JGO's mental state was from the Commissioner's consulting psychologist, Dr. Lanclos, who found JGO appeared to have below average intellectual functioning and recommended academic evaluation to determine whether JGO needed special education assistance, and also recommended a psychiatric evaluation for medication management. However, it does not appear that an academic evaluation or an IQ test were ordered, since there were no IQ or other tests done subsequent to Dr. Lanclos' evaluation through the time of the administrative hearing.[3]

Claimants submitted, with their brief, a March 2009 psychological evaluation of JGO by Dr. Jerry L. Whiteman, a psychologist (Doc. 14, Ex.); apparently, claimants obtained this test on their own and took a taxi from Bunkie to Lake Charles and back in order to do so. Dr. Whiteman found JGO was a sixteen year old male, 5'11" tall, and 245 pounds, who had been taking Prozac for two years. Dr. Whiteman found JGO has a full scale IQ of 75 (borderline), a verbal IQ of 81, and performance IQ of 72. Dr. Whiteman diagnosed depression with anxious features at Axis I and borderline intelligence at Axis II. Dr. Whiteman concluded that, although JGO takes an antidepressant, he continues to display

---

[3] However, JGO underwent psychiatric evaluation, medication, and counseling at the Avoyelles Mental Health Clinic (Tr. pp. 157-167).

symptoms that suggest an inability to address the tasks of daily living without some support.  Dr. Whiteman filled out a mental residual functional capacity form[4] which indicated JGO has slight limitations in his abilities to understand and remember short, simple instructions, and carry out short, simple instructions.  Dr. Whiteman further indicated that JGO has moderate limitations in his abilities to understand and remember detailed instructions, to carry out detailed instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, to interact appropriately with supervisors, and to interact appropriately with co-workers.  Dr. Whiteman indicated that JGO has marked limitations in his abilities to respond appropriately to work pressure in a usual work setting, and to respond appropriately to changes to a routine work setting.

Claimants contend Dr. Whiteman's assessment constitutes new evidence.  Claimants contend JGO's IQ scores (the lowest being 72), coupled with his depressive disorder, is equivalent to Listing 112.05D.[5]  The court's jurisdiction in this Social Security case

---

[4] It is noted that Dr. Whiteman used the wrong form.  JGO's mental residual functional capacity should have been analyzed in the context of a child's functioning, not an adult's.  A child's functioning is analyzed in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  See 20 C.F.R. § 416.926a; <u>Moore ex rel. Moore v. Barnhart</u>, 415 F.3d 718, 723 n.4 (5th Cir. 2005).

[5] Actually, claimants contend JGO is equivalent to Listing 12.05C.  However, since the children's listings must be used (Appendix I, Part B), the children's listing which mirrors 12.05C is 112.05D.

is a wholly appellate review on the administrative record. Therefore, Social Security plaintiffs are denied the opportunity to present new evidence to a reviewing court outside the context of a request to remand. Ellis v. Bowen, 820 F.2d 682, 684 (5th Cir. 1987); 42 U.S.C. § 405(g).

The pertinent part of 42 U.S.C. § 405(g) which authorizes this Court to remand a Social Security case to the Commissioner, states:

> "The court...may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding..."

In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987). A remand to the Commissioner is not justified if there is no reasonable possibility that it would have changed the outcome of the Commissioner's determination. Bradley, 809 F.2d at 1058, citing Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981).

Evidence is "new" if it is not cumulative and adds to the evidence already existing in the case. Bradley, 809 F.2d at 1058. "Materiality" is composed of two strands, relevance and probativeness. Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981). To be relevant, the new evidence must relate to the time period for which benefits were denied and cannot concern evidence of a later acquired disability or subsequent deterioration of a previously non-disabling condition. Bradley, 809 F.2d at 1058;

Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985). It is implicit in the materiality requirement that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994), citing Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989).

The new evidence as to JGO's mental functional capacity is new and material. As pointed out by Owens, the ALJ should have ordered further testing as recommended by the first consulting psychologist, Dr. Lanclos. Therefore, the new evidence is relevant, since it is evidence of JGO's IQ, which was not previously measured. The new evidence is probative of JGO's mental residual functional capacity. Finally, there was good cause for failure to incorporate this evidence into the record at the administrative proceeding because the ALJ failed to order the test at that time.

However, claimants are not able to show prejudice. A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990). Also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990). Where the impairment is severe, the Commissioner must determine whether the impairment is so severe that the claimant will be presumed to be disabled. This determination is made by comparing the impairment to a specific Listing of Impairments in the SSA regulations. See 20

C.F.R. § 404, Subpart P, Appendix 1. If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. <u>Cieutat v. Bowen</u>, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 n. 1 (5th Cir. 1990).

Listing 112.05(D) states, in pertinent part: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." JGO argues that his performance IQ of 72, coupled with his depression, equals the lower IQ score required by Listing 112.05(D). However, JGO must also have an additional physical or other mental impairment to meet the listing. Since he is using his depression to effectively lower his IQ score, he does not have another impairment to meet the rest of the listing requirements.

Therefore, JGO has not shown that, even if the ALJ had ordered the IQ test before the administrative hearing, he would have met or equaled Listing 112.05(D). This issue is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Owens' appeal on behalf of JGO be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 27th day of October, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE